# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CRIMINAL ACTION |
| v. ) | |
| ) | No. 09-20046-04-CM |
| VERDALE HANDY ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

## **MEMORANDUM AND ORDER**

On December 16, 2010, a jury returned a verdict of guilty against defendant Verdale Handy for various offenses, including conspiracy to distribute 100 grams or more of a mixture containing heroin in which death and serious bodily injury occurred, distribution and possession with the intent to distribute heroin, and attempted murder. Defendant seeks a new trial on all of the charges against him in his Motion for a New Trial (Doc. 50). For the following reasons, the court denies the motion.

**I.  Judgment Standards**

In considering a motion for new trial, the court has broad discretion that will not be disturbed on appeal absent plain abuse of that discretion. *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987). A court may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33. Additionally, any error which would require reversal on appeal is a sufficient basis for granting a new trial. *United States v. Walters*, 89 F. Supp. 2d 1206, 1213 (D. Kan. 2000) (quotation and citation omitted). The court should grant a motion for a new trial if, "after weighing the evidence and the credibility of the witnesses, the court determines that 'the verdict is contrary to the weight of the evidence such that a miscarriage of justice may have occurred.'" *United States v.*

*Gabaldon*, 91 F.3d 91, 93–94 (10th Cir. 1996) (quoting *United States v. Evans*, 42 F.3d 586, 593 (10th Cir. 1994)). But courts disfavor new trials, *United States v. Gleeson*, 411 F.2d 1091, 1093 (10th Cir. 1969), and exercise great caution in granting them, *United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997). The burden of proving that a new trial is warranted rests on defendant. *Walters*, 89 F. Supp. 2d at 1213 (citations omitted).

**II.     Analysis**

Defendant's motion raises three arguments for why the court should grant him a new trial: (1) the government's repeated references to his post-arrest silence; (2) the government's failure to disclose impeachment evidence of its witnesses; and (3) previously raised speedy trial violations.

**A.     Post-Arrest Silence**

Defendant alleges that the government intentionally and unconstitutionally commented on defendant's Fifth Amendment right to remain silent on two occasions: Once during the government's cross-examination of defendant, when the government asked defendant whether he had provided the police with exculpatory evidence when they arrested him. And again during closing arguments, when the government rhetorically asked the jury why defendant had not provided exculpatory evidence to the police when they arrested him.[1]

At trial, defendant took the stand and testified about his presence at the scene of the attempted murder of Henry Nelson—he testified that he was present but that another person, Bernard Meeks, shot Mr. Nelson. After defendant testified that Mr. Meeks was the person who had attempted to murder Mr. Nelson, the government's attorney asked defendant if the first time he told

---

[1] Defendant does not raise any issues with comments made by the government regarding defendant's failure to provide exculpatory evidence to family and friends before his arrest.

the story about Mr. Meeks was when he was on the stand. Defense counsel did not object, and defendant responded that it was the first time he had told it in the courtroom. The government's attorney then asked defendant if the first thing he said to the officers when they arrested him was that he knew who shot Mr. Nelson. Defense counsel objected, and the court sustained the objection. Defendant did not answer the question.

During closing arguments, the government said that the first time the defendant's alibi story had been told was when defendant was on the stand, and she rhetorically asked the jury why information that would exonerate someone would not come up until the last day of trial. Defendant objected, and the court sustained the objection, telling the government not to continue that line of argument. Defendant then moved for a mistrial. The court denied the motion. After carefully weighing the arguments, the court found that the one comment made by the government did not impede defendant's right to a fair trial. The court reminded counsel that it had informed the jury that counsel's statements are not evidence and not to be considered by them. Before the government continued its closing argument, the court again told the jury that counsel's statements are not evidence.

*Doyle v. Ohio*, 426 U.S. 610 (1976) prohibits the government from using against a criminal defendant silence maintained after the defendant has received governmental assurances that his silence will not be used against him. *Fletcher v. Weir*, 455 U.S. 603, 606 (1982) (citing *Anderson v. Charles*, 447 U.S. 404, 407–08 (1980)). The *Miranda* warning implicitly assures a person that his silence will carry no penalty. *Doyle*, 426 U.S. at 618. Because silence after a person has received the *Miranda* warning may be nothing more than the exercise of these *Miranda* rights, *id*. at 617, allowing the government to use post-*Miranda*-warning silence against a defendant is a violation of due process, *Fletcher,* 455 U.S. at 605; *United States v. Massey*, 687 F.2d 1348, 1353 (10th Cir.

1982) ("The use of a defendant's post-arrest silence to impeach an exculpatory story told for the first time at trial violates the Fourteenth Amendment's mandate of due process if the silence follows the giving of *Miranda* warnings."). But, in the absence of affirmative assurances—such as the *Miranda* warning—the government may cross-examine a defendant about his post-arrest silence when a defendant chooses to take the stand. *Fletcher,* 455 U.S. at 607; *Massey*, 687 F.2d at 1353 ("[T]he Supreme Court made clear that due process is not violated by cross-examination on post-arrest silence where a *Miranda* warning was not given.") (citing *Fletcher*, 455 U.S. at 604–07)).

Defendant argues that the government's questioning on cross-examination and comment during closing arguments "constituted a use of the defendant's *Miranda* rights." (Doc. 485 at 2.) However, the record establishes, through the government's proffer, that the officers did not give defendant the *Miranda* warning immediately. In fact, according to the government's proffer, defendant had a conversation with the officers before he was given the warning and invoked his *Miranda* rights. Defense counsel did not object to the government's proffer.

The government's question to defendant during cross-examination was whether the first thing he said to the arresting officers was that he knew who shot Mr. Nelson. Because defendant was not given his *Miranda* warning or any other assurances when he was first arrested, *Doyle* is inapplicable. *See, e.g., Fletcher,* 455 U.S. at 607; *see also Massey*, 687 F.2d at 1353. For these reasons, the court finds that the government's questioning on cross-examination and comment during closing statements did not violate defendant's due process rights.

Even if the court found the government's comments to be in error, the error was harmless, and thus does not warrant a new trial. When the government unconstitutionally uses a defendant's post-*Miranda*-warning silence, the defendant is entitled to a new trial unless the error was harmless beyond a reasonable doubt. *Massey*, 687 F.2d at 1353 ("Because it is of constitutional dimension,

such an error requires a new trial unless we are convinced that the error is harmless beyond a reasonable doubt after assessing the record as a whole.") (citations omitted).

Considering the record as a whole, the court looks at the following factors to determine whether the error was harmless: (1) the use to which the prosecution puts the post-arrest silence; (2) who elected to pursue the line of questioning; (3) the quantum of other evidence indicative of guilt; (4) the intensity and frequency of the reference; and (5) whether the trial judge had an opportunity to grant a motion for mistrial or to give curative instructions. *United States v. Canterbury*, 985 F.2d 483, 487 (10th Cir. 1993) (quoting *Massey*, 687 F.2d at 1353)). The essence of this inquiry is "the purpose for which the defendant's silence was introduced, and the quantum of other evidence supporting the guilty verdict." *Id.*

Although the prosecution pursued the line of questioning and used the post-arrest silence to imply defendant's story was not credible, the remaining factors make any error in the use of defendant's post-arrest silence harmless. During cross-examination, the court sustained defendant's objection, and defendant did not answer the question about his post-arrest silence. The only testimony presented to the jury about the timing of the story was that defendant's direct examination was the first time the story was told *in the courtroom*. The government's comments during closing arguments were remedied by defendant's immediate objection and the court's curative instruction during the government's closing argument. Additionally, the court considered defendant's motion for a mistrial, and denied it based on the record.

Further, the court is convinced that the jury's guilty verdicts were well-supported by the weight of the evidence. There was a significant quantity of evidence in the case, including testimony from Mr. Nelson about the attempted murder. Mr. Nelson explained the events leading up to and taking place after the attempted murder and he unequivocally identified Mr. Handy, his

such an error requires a new trial unless we are convinced that the error is harmless beyond a reasonable doubt after assessing the record as a whole.") (citations omitted).

Considering the record as a whole, the court looks at the following factors to determine whether the error was harmless: (1) the use to which the prosecution puts the post-arrest silence; (2) who elected to pursue the line of questioning; (3) the quantum of other evidence indicative of guilt; (4) the intensity and frequency of the reference; and (5) whether the trial judge had an opportunity to grant a motion for mistrial or to give curative instructions. *United States v. Canterbury*, 985 F.2d 483, 487 (10th Cir. 1993) (quoting *Massey*, 687 F.2d at 1353)). The essence of this inquiry is "the purpose for which the defendant's silence was introduced, and the quantum of other evidence supporting the guilty verdict." *Id.*

Although the prosecution pursued the line of questioning and used the post-arrest silence to imply defendant's story was not credible, the remaining factors make any error in the use of defendant's post-arrest silence harmless. During cross-examination, the court sustained defendant's objection, and defendant did not answer the question about his post-arrest silence. The only testimony presented to the jury about the timing of the story was that defendant's direct examination was the first time the story was told *in the courtroom*. The government's comments during closing arguments were remedied by defendant's immediate objection and the court's curative instruction during the government's closing argument. Additionally, the court considered defendant's motion for a mistrial, and denied it based on the record.

Further, the court is convinced that the jury's guilty verdicts were well-supported by the weight of the evidence. There was a significant quantity of evidence in the case, including testimony from Mr. Nelson about the attempted murder. Mr. Nelson explained the events leading up to and taking place after the attempted murder and he unequivocally identified Mr. Handy, his

cousin, as the person who shot him. He also testified that he thought defendant had stopped trusting him and that defendant had asked him why he was saying what he was saying. Ferdinand Handy, defendant's brother, testified that prior to the attempted murder, he learned information from a coconspirator that lead him to believe that Mr. Nelson was the snitch. He testified that he told defendant that Mr. Nelson "wasn't right," implying Mr. Nelson was the snitch. This testimony supports the government's theory that defendant attempted to kill Mr. Nelson because defendant believed Mr. Nelson had "snitched" to law enforcement. The evidence presented, including testimony from coconspirators and law enforcement officers, supports the verdicts in this case.

### B. Impeachment Evidence

Defendant argues he is entitled to a new trial because the government failed to meets its obligations under *Giglio v. United States*, 405 U.S. 150 (1972), by failing to disclose certain impeachment evidence about its confidential informants. Pursuant to its constitutional obligations, the government disclosed to defense counsel that any confidential informant that was not paid for his or her services was "working off charges." The government did not specify what charges each informant was "working off." Defendant contends that failure to disclose the charges was a *Giglio* violation.

It is well settled that "criminal convictions obtained by presentation of known false evidence or by suppression of exculpatory or impeaching evidence violates the due process guarantees of the Fourteenth Amendment." *Douglas v. Workman*, 560 F.3d 1156, 1172 (2009) (citing *Napue v. Illinois*, 360 U.S. 264, (1959); *Brady v. Maryland*, 373 U.S. 83 (1963)). To establish a constitutional violation for suppression of impeaching evidence, the defendant must show that (1) the evidence at issue is favorable to the defendant; (2) the government suppressed the evidence, either willfully or inadvertently; and (3) prejudice ensued, which occurs when the evidence is material. *Id.* at 1173

(citing *Banks v. Dretke*, 540 U.S. 668, 691 (2004)).  Here, the government argues that the defendant cannot meet the prejudice element.

For purposes of the third element, evidence is material when there is a reasonable probability that the trial outcome would have been different had the government disclosed the evidence to the defense.  *Strickler v. Greene*, 527 U.S. 263, 289 (1999).  "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."  *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

"In the event that the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule."  *Giglio*, 405 U.S. at 154 (internal quotations omitted).  "[E]vidence insignificantly impacting the degree of impeachment may not be sufficient to meet the *Kyles* materiality standard, while evidence significantly enhancing the quality of the impeachment evidence usually will."  *Douglas*, 560 F.3d at 1174.

Defendant argues that the undisclosed evidence is material because an informant's credibility is affected by the type of charge he or she is working off—the degree of motivation to avoid prosecution varies depending on the charge the informant is avoiding.  Defendant argues he was prejudiced by the nondisclosure because defense counsel was forced to question informants about the charges on cross-examination and was unable to know if the answer was truthful.  But defendant does not identify any specific prejudice.  He does not identify how the nondisclosed evidence would have significantly enhanced the impeachment quality of any particular witness.  He does not identify a witness whose testimony was critical for whom he did not receive this information.  And he does not identify a witness who he believes provided false information.

Although knowing the specific charge may have been beneficial impeachment evidence, defense counsel was able to attack the credibility of the informants by showing they were getting something in return for their testimony, whether it be getting paid or avoiding prosecution. On the record presented, the court finds that the nondisclosed information would not have significantly enhanced the quality of the impeachment.

Further, the court is convinced that there is no reasonable probability that the additional impeachment evidence would have resulted in a different outcome. The court is convinced that the jury's guilty verdicts were well-supported by the weight of the evidence. There was a significant quantity of evidence in the case aside from the confidential informants, including video recordings of drug deals and testimony from customers, coconspirators, and law enforcement officers, to support the verdicts in this case. For these reasons, the court finds the nondisclosure did not affect the fairness of defendant's trial. In this case, the nondisclosed evidence could not reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

### C. Speedy Trial

Without raising new arguments, defendant again states that he was denied his constitutional and statutory rights to a speedy trial as previously argued in Docs. 306, 307, and 319. For the reasons set forth in the court's prior rulings addressing defendant's arguments—on the record at the October 12, 2010 hearing (Doc. 364 ) and in its July 27, 2010 Memorandum and Order (Doc. 339)—the court finds defendant was not denied a speedy trial and is not entitled to a new trial.

The interests of justice do not require defendant be granted a new trial. Defendant's motion is denied.

**IT IS THEREFORE ORDERED** that Motion for a New Trial (Doc. 50) is denied.

Dated this 23rd day of June 2011, at Kansas City, Kansas.

                                                **s/ Carlos Murguia**
                                                **CARLOS MURGUIA**
                                                **United States District Judge**